802 F.2d 459
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
VERLIN J. SPEEKS, Plaintiff-Appellant
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 85-5843.
 United States Court of Appeals, Sixth Circuit.
 Aug. 12, 1986.
 
 BEFORE: MERRITT and GUY, Circuit Judges, and BALLANTINE, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff appeals from a final decision of the Secretary of Health and Human Services (Secretary) denying disability benefits, which denial was upheld by the district court upon appeal. The district judge found that there was substantial evidence to support the Secretary's decision. We agree with the district judge and affirm.
 
 
 2
 This case was before the district court on two separate occasions as a result of two separate appeals. On the first appeal the district court found the decision of the Administrative Law Judge (ALJ) that plaintiff had no severe impairment was not supported by substantial evidence. Upon remand the AlJ ruled that, notwithstanding a severe impairment, plaintiff had the residual functional capacity to perform sedentary work. On the second appeal the district court found that the Secretary's decision was supported by substantial evidence. Thus, the question for this court is now limited to whether substantial evidence supports the conclusion that plaintiff maintains the residual functional capacity to perform sedentary work notwithstanding his severe impairment.
 
 
 3
 This question breaks down into three areas of inquiry. (1) Since plaintiff can no longer perform his past work does he have transferable skills? (2) Can the plaintiff in fact perform sedentary work? (3) Is such work as plaintiff can perform available in the region in which he resides or other regions which exist in the national economy?
 
 Transferable Skills
 
 4
 There can be little doubt that substantial evidence supports the finding that the plaintiff has transferable skills. The vocational expert reached this conclusion and it is amply supported by the record.[1] Although some of plaintiff's work was heavy, outdoor work, he also had spent considerable time in the shop acquiring the kinds of skills which are clearly transferable.
 
 Sedentary Work
 
 5
 This issue actually calls into consideration the totality of the medical testimony that was before the ALJ, as well as plaintiff's testimony and the personal observation and evaluation of plaintiff made by the ALJ at two separate hearings held 18 months apart.[2]
 
 
 6
 As to the medical evidence, there is no doubt that parts of it support plaintiff's claim and parts of it do not. The question, however, is not whether we would have relied on the same evidence as did the ALJ or reached the same conclusion, but whether there is substantial evidence to support the conclusion reached. Without attempting an exhaustive enumeration, we find the following to be substantially supportive of the ALJ's conclusion.
 
 
 7
 1. The claimant's medical problems are to a large extent traceable to a November 12, 1980 industrial accident in which he was struck by a falling pipe and fell about ten feet. Head and neck injuries were sustained, but they were not diagnosed as serious. Although complaining of vertigo (which is still one of plaintiff's chief complaints), plaintiff's neurological examination, a CT scan, and electroencephalogram, and skull X-rays were all within normal limits. There were no fractures, the injuries being limited to sprains and strains.
 
 
 8
 2. After the November, 1980 accident, plaintiff returned to work and worked until April 5, 1982, when he was laid off due to a reduction in force. Plaintiff subsequently drew unemployment compensation.
 
 
 9
 3. Right up to the time of plaintiff's lay off, he was driving 140 miles per day to and from work.
 
 
 10
 4. A decision by a hearing representative of the U. S. Department of Labor, Office of Workers' Compensation, found that plaintiff had no injury related disability subsequent to March 4, 1983.[3]
 
 
 11
 5. Although plaintiff has arteriosclerotic heart disease and had a double by-pass in 1982, the surgery was very successful. After the surgery, plaintiff had normal blood pressure, weight, clear chest, and a regular heart rhythm with no murmur or rub. He was put on walking exercises leading up to two miles a day.
 
 
 12
 6. A residual functional capacity assessment made in February of 1983 indicated plaintiff could perform work activity. He could lift up to 50 pounds occasionally and 25 pounds frequently; he could stand or walk about six hours in an eight-hour day; and his pushing and pulling ability was unlimited.
 
 
 13
 7. When plaintiff's subjective complaints of pain are evaluated pursuant to the standards set forth in Sec. 3(a)(1) of the Social Security Disability Benefits Reform Act of 1984, Pub. L. 98-460, which amended Sec. 223(d)(5) of the Social Security Act, 42 U.S.C. Sec. 423(d)(5), it is apparent that there is a lack of objective medical evidence supporting disabling pain. This conclusion is further buttressed by the fact that plaintiff is no longer receiving any regular medical attention.
 
 
 14
 8. There is no demonstrated objective medical basis for plaintiff's continuing claims of vertigo. They have been diagnosed as either functional, that is, without organic origin, or caused by medication which is subject to change or adjustment.
 
 Availability of Sedentary Work
 
 15
 Little time need be spent on this issue since the vocational expert's conclusion that work exists both in the region and nationally which plaintiff could perform is unchallenged.[4]
 
 
 16
 After a careful review of the record as a whole and mindful of the limited nature of our review, we find that substantial evidence exists to support the Secretary's conclusion.
 
 
 17
 AFFIRMED.
 
 
 
 *
 Honorable Thomas A. Ballantine, Jr., United States District Court, Western District of Kentucky, sitting by designation
 
 
 [1]
 Q. Dr. Brewer, would you consider based on whatever evidence you find in the file and what testimony the claimant's -- the degree of skill in his work? Was it skilled, semi-skilled or unskilled?
 A. Skilled, Your Honor.
 Q. Okay. What would you consider his job, having reviewed the file for the last 15 years? What kind of work -- What work did he do?
 A. Sheet metal work, which included various activities, fabricates, assembles -- assemblies and installs and repairs sheet metal products and equipments; selects gauge, type of sheet metal, according to product being fabricated; and knowledge of metals, locates --
 Q. Can you hear him?
 CLAIMANT: Yes.
 BY ADMINISTRATIVE LAW JUDGE:
 Q. Okay. Okay.
 A. -- locates and marks reference lines on metal -- sheet metal work, sets up and operates fabricating machines, such as shears, brakes --
 Q. Just let the record show that Mr. Speeks is kind of shaking his head in agreement --
 CLAIMANT: Yes.
 BY ADMINISTRATIVE LAW JUDGE:
 Q. Alright, Go ahead.
 A. -- metal presses to cut and straighten metal; shapes metal; sets up and operates soldering and welding equipment to join sheet metal products together.
 CLAIMANT: Right.
 A. Smooth seams, joints
 CLAIMANT: Right.
 A. And "INAUDIBLE" surfaces when there is rivets or --
 CLAIMANT: Right.
 A. Use files, portable sanders; also inspects and -- the installation itself and the product to make sure it meets conformance --
 CLAIMANT: Right.
 A. -- and specifications, using measuring instruments, microneters. Also reads blueprints, laying out work, welding. Also -- Well, in a shop a lot of times they'll assemble things in the shop and then bring it to the work-shop site, because all the equipment is in the shop and that's usually where the shop worker -- they fabricate products there, and bring it to the construction sites. Use tapes, rules --
 Q. Tapes?
 A. Yeah, tape measures.
 Q. Okay.
 A. Rules for measuring sheet metal and layout work; hand shears, hacksaws, power saws for cutting. They use ball peen hammers, and hammers and drills, too.
 CLAIMANT: Scales.
 A. Yeah. They use a variety of hand tools.
 Q. Okay. So you would conclude that based upon that that his work was skilled?
 A. Yes, Your Honor.
 (App. 251-253.)
 
 
 [2]
 Although this case was initially remanded by the district court, upon remand, it was heard by the same ALJ
 
 
 [3]
 Plaintiff had been a TVA employee when injured which explains the involvement of the Department of Labor. Also, plaintiff was actually paid workers' compensation benefits through January 31, 1983, since that was the date that the Department of Labor had him examined
 
 
 [4]
 Plaintiff does challenge the fact that the vocational expert testified there were jobs but did not specifically testify that this plaintiff could do those jobs. That is not necessarily the vocational expert's function, however. It is the responsibility of the ALJ to determine from the entire record if plaintiff is capable of performing the jobs once it is determined that work is available